O

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ARTHUR JACOBS,                )    Case No. 2:06-CV-01363-VAP
                              )
              Plaintiff,      )
                              )    **ORDER DISMISSING PETITION**
        v.                    )    **FOR WRIT OF HABEAS CORPUS**
                              )    **WITH PREJUDICE**
THOMAS CAREY, et al.,         )
                              )
              Defendants.     )
_____)

     Before the Court is a Petition for Writ of Habeas
Corpus ("Petition") filed by Petitioner Arthur Jacobs
("Petitioner").  The Court finds the matter appropriate
for resolution without a hearing.  <u>See</u> Fed. R. Civ. P.
78; L.R. 230(g).  After consideration of the papers in
support of, and opposition to the Petition, the Court
DENIES the Petition.

## I.    BACKGROUND

**A. Statement of Facts**

    **1.    Underlying Events**

On the evening of May 15, 1983, J.S. was at her home in Long Beach, California, when she heard her 23-year-old daughter L.S. "yelling for somebody to leave her alone." (Hearing Trans. at 12:3-10; Ans. Ex. D ("Probation Report") at 2.)  J.S. began running down the hall to help her daughter, but was stopped near the den by a man J.S. later identified as Petitioner.  (Hearing Trans. at 12:10-14.)  Petitioner grabbed J.S. and said: "[D]on't scream, don't yell, we're not going to hurt her."  (Id. at 12:12-14.)  J.S. escaped from Petitioner's grasp, entered the den and saw Thomas Owens ("Owens"), who was armed with a shotgun, assaulting the victim.  (Id. at 12:15-20.)  J.S. attempted to intervene but was beaten until she passed out.  (Id. at 12:20-22.)  When she woke, she discovered her daughter had been fatally shot.  (Id. at 12:22-26.)  Later investigation revealed that Owens had shot the victim in the head at close range. (Probation Report at 2.)  J.S. suffered a cut on her right earlobe, a puncture wound on her right forearm, and other minor injuries.  (Hearing Trans. at 12:26-13:6.)

Petitioner was arrested in connection with the shooting on November 30, 1984, after his then-girlfriend told police Petitioner resembled a composite drawing of

1  one of suspects.  (Id. at 13:6-15.)  At the first trial,
2  Petitioner was identified as the suspect by J.S. and
3  Randall DuBois, a man who was attending a party across
4  the street from the victim's home on May 15, 1983, and
5  pursued the suspects as they were leaving the house after
6  the shooting.  (Id. at 14:15-15:1.)  During the second
7  trial, Mr. DeBois recanted, saying the second suspect
8  "may or may  not" have been Petitioner.  (Ans. Ex. E at
9  10.)  Other witnesses testified they had frequently seen
10  the victim in the company of Owens and Petitioner.
11  (Hearing Trans. at 14:11-15.)  Some speculated that the
12  victim owned Owens money for drugs, and that this was the
13  motive for the shooting.  (Pet. at 13; Ans. Ex. C at 2;
14  Hearing Trans. at 80:14-22.)

15

16      Petitioner maintains that, although he was a friend
17  of Owens, he did not know the victim and did not
18  participate in the shooting.  (Id. at 15:17-16:3.)
19  According to Petitioner, he drove from Northern
20  California to the Long Beach area on May 14, 1983, the
21  day before the shooting, and stayed overnight with Owens.
22  (Id. at 17:15-18:15.)  During the afternoon the following
23  day, Petitioner left Long Beach and drove to Desert Hot
24  Springs, where he was visiting his mother at the time the

25

26

27

28

1  shooting occurred.[1]  (Id. at 18:18-26; Pet. Unmarked Ex.,

2  Letter from Theodore Ponticelli, Nov. 15, 2004.)

3

4      **2.  Petitioner's Conviction**

5      A jury in Los Angeles County Superior Court convicted

6  Petitioner of second degree murder with a firearm

7  enhancement on August 5, 1985 ("1985 Conviction").  (Ans.

8  Ex. D at 7.)  Petitioner appealed the conviction and was

9  granted a new trial. (Pet. at 1.)  On October 19, 1992,

10 Petitioner was released on bail. The second trial jury

11 convicted Petitioner of second degree murder with a

12 firearm enhancement and assault with a deadly weapon on

13 May 5, 1993 ("1993 Conviction").  (Ans. Ex. A.)

14 Petitioner was sentenced on May 11, 1993, and judgment

15 was entered on May 18, 1993.  (Id.)  Petitioner began

16 serving a term of twenty years to life on July 28, 1993.[2]

17 (Pet. at 1.)  On August 11, 2994, the California Court of

18 Appeal affirmed the second conviction.  (Ans. Ex. E.)

19 Petitioner did not file any direct appeal or habeas

20 corpus petitions challenging his second conviction.

21 (Pet. at 1.)

22 _____

23      [1] Petitioner and Petitioner's mother assert that
   polygraph tests confirmed that they were both in Desert
24 Hot Springs at the time of the shooting, but it is
   unclear whether this evidence was presented at either
25 trial.  (Pet. Unmarked Ex., Letter from Theodore
   Ponticelli, Nov. 15, 2004.)

26

27      [2] Petitioner's term includes fifteen years for second
   degree murder, plus an additional year for the firearm
28 enhancement and four years for the assault conviction.
   (Ans. Ex. A.)

## B.   Procedural History

Since Petitioner's 1993 Conviction, Petitioner has appeared before the Board of Prison Terms ("BPT") on two occasions. When Petitioner first appeared before the BPT on March 4, 1999, the BPT denied parole for five years. (Pet. at 2.)  At a second hearing on June 16, 2005 ("the hearing"), the BPT denied Petitioner parole, and recommended that he remain discipline-free in prison and participate in self-help and substance abuse programs. (Pet. at 2; Ans. at 2; Ans. Ex. B at 85:13-86:7.)  The allegations in this Petition concern the BPT's denial of parole at the June 16, 2005, hearing.

At the hearing, Petitioner introduced and the BPT considered several letters in  support of parole. Specifically, Joyce and Milo Hunt wrote Petitioner a letter of support indicating they believed Petitioner was not involved in the commitment offense.  They stated they have known Petitioner since he was nineteen, they think of Petitioner as one of their own children and Petitioner will "always have a home and total support from them." (Id. at 48:20-49:3 (letter paraphrased by BPT Commissioner Fisher).)  Steve Hunt also sent a letter of support, indicating he would give Petitioner a job and a place to live whenever he needed it.  (Id. at 50:3-21.) Petitioner also received letters of support from long-time friends Maggie Philoctete (Id. at 47:11-48:2.),

1  Karen Aanderud (<u>Id.</u> 48:3-10.), Kevin Crawford (<u>Id.</u> at

2  48:10-18.), Donnelle Mulinschmidt (<u>Id.</u> at 49:21-50:1.)

3  and R.L. Armstrong (<u>Id.</u> at 50:21-51:2.).

4

5       In opposition, the BPT received a letter from the

6  Long Beach Police Department, which investigated the

7  commitment offense, opposing Petitioner's release on

8  parole due to the nature of the offense and Petitioner's

9  lack of remorse.  (Ans. Ex. C.)  A representative from

10  the Los Angeles District Attorney's Office, which

11  prosecuted the commitment offense, opposed parole via

12  video-conference.  (Hearing Trans. 83:6-10.)  At the

13  hearing, the victim's brother and sister, M.S. and J.C.,

14  also asked the BPT to deny parole.  (Hearing Trans. 75:7-

15  78:12.)  Both emphasized the devastating effect of the

16  commitment offense on their family in general and on

17  J.S., the victim's mother, in particular.  (<u>Id.</u>)  J.C.

18  also said she believed Petitioner would be more likely to

19  re-offend due to his minimal involvement in Alcoholics

20  Anonymous.  (<u>Id.</u> at 77:25-78:3.)

21

22  **1.   BPT's Decision and Reasoning**

23       The BPT concluded Petitioner was "not yet suitable

24  for parole and would pose an unreasonable risk of danger

25  to society or threat of public safety if released from

26  prison."  (Hearing Trans. at 79:9-15.)  The BPT based its

27

28

decision primarily on the nature of the commitment offense. (<u>Id.</u> at 79:15-81:8; 84:11-85:2.)

The BPT cited three additional reasons for finding Petitioner's unsuitable for parole: (1) Petitioner's past arrests for drug or alcohol offenses and interfering with a police officer constitute an "escalating pattern of criminal conduct," and is evidence of an unstable social history (<u>Id.</u> at 81:9-11, 85:2-6.); (2) the staff psychologist recommended Petitioner participate in more self-help programs and develop better coping mechanisms for dealing with obsessive thoughts related to Petitioner's asserted innocence (<u>Id.</u> at 82:13-25, 85:6-13, 81:24-82:1) and (3) Petitioner has not participated in substance abuse programs since about 1999 (<u>Id.</u> at 82:4-13, 85:16-86:9.).

## 2.   Petitioner's Writ of Habeas Corpus in State Court

Petitioner challenged the BPT's denial of parole by filing a petition for writ of habeas corpus in Los Angeles County Superior Court ("Superior Court") on October 31, 2005. (Ans. Ex. F, Final Order, "Sup. Court Decision.")

### a.   Superior Court Decision

On December 16, 2005, the Superior Court denied the petition, finding there was "some evidence" to support the BPT's denial of parole.  (<u>Id.</u> at 1:19-24.)

The Superior Court relied primarily on the BPT's determination that the brutal nature of the commitment offense and the triviality of the motivation for the offense constitute "some evidence."  (<u>Id.</u> at 2:15-25.) The Court also agreed with the BPT's conclusion that denial of parole was supported by Petitioner's need to resume participation in substance abuse programs and other self-help programs to help him cope with what the psychologist described as "obsessive thoughts" related to Petitioner's asserted innocence. (<u>Id.</u> at 3:12-21.)

The Superior Court, however, rejected the BPT's conclusions that Petitioner was unsuitable due to a record of violence or unstable social history.  (<u>Id.</u> 3:1-11.)  The court concluded there is no evidence that Petitioner has a history of violence, since he has only been arrested for non-violent offenses (<u>Id.</u> at 3:1-6.), and no evidence that Petitioner has an unstable social history, since he has had three stable long-term relationships and many close friendships.  (<u>Id.</u> at 7-11.)

1    The Superior Court also rejected Petitioner's claims

2  that the BPT improperly considered Petitioner's refusal

3  to admit guilt, that the BPT improperly considered

4  evidence from the victim's family, and that Petitioner's

5  term has become grossly disproportionate to his

6  commitment offense (collectively, "Petitioner's secondary

7  claims").  (Id.)

8

9         **b.  Appellate Decisions**

10    On February 14, 2006, Petitioner filed a petition

11  with the California Court of Appeal, which summarily

12  denied the petition on March 10, 2006.  (Ans. Ex. G.)

13  The Court of Appeal stated: "The record submitted

14  reflects some evidence to support the challenged decision

15  of the Board of Prison Terms. (In re Dannenberg (2005) 34

16  Cal.4th 1061, 1071, 1080; In re Rosenkrantz (2002) 29

17  Cal.4th 616 664-665.)"  (Id.)  The Court of Appeals also

18  summarily rejected Petitioner's secondary claims.  (See

19  id.)  On March 20, 2006, Petitioner brought a third

20  petition to the California Supreme Court, which denied

21  review on May 24, 2006.  (Ans. ¶ 5, Ex. G.)

22

23    **3.  Petitioner's Federal Claims**

24    Petitioner filed this petition on June 20, 2006, and

25  asserts the following grounds for federal habeas corpus

26  relief:

27

28

1.   The BPT violated Petitioner's state and federal constitutional rights to due process by denying him parole without "some evidence" to support its decision;

2.   The BPT improperly considered Petitioner's refusal to admit guilt as a factor weighing in favor of unsuitability for parole, in violation of Cal. Penal Code § 5011 and Cal. Code of Regs., tit. 15, § 2236.

3.   The BPT improperly considered testimony from victim's family as a factor weighing in favor of unsuitability for parole;

4.   Petitioner's prison term has become grossly disproportionate with his commitment offense, in violation of the California Constitution.

## II.   STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

> Because "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners,' [federal courts] may review only whether the California-created liberty interest in parole satisfies the 'minimal' procedural requirements of the Due Process Clause. [citation] In other words, "[b]ecause the only federal right at issue is procedural, the relevant inquiry is what process [the petitioner] received, not whether the state court decided the case correctly."

<u>Smiley v. Hernandez</u>, No. 06-55727, 2011 WL 343951, *1 (9th Cir. Jan. 28, 2011) (citing <u>Swarthout v. Cooke</u>, 562 U.S. ___, 2011 WL 197627, at *2 (2011) (per curiam)).

     Thus, when reviewing cases challenging parole suitability determinations, a federal court's decision regarding whether inmates denied parole received due process is a limited inquiry: whether "[t]hey were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied." <u>Swarthout v. Cooke</u>, 562 U.S. ___, 2011 WL 197627 (2011), *2-3 ("When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication-and federal courts will review the application of those constitutionally required procedures.  In the context of parole, . . . the procedures required are minimal . . . . The Constitution . . . does not require more.").  "It is no federal concern . . . whether California's 'some

evidence' rule of judicial review (a procedure beyond
what the Constitution demands) was correctly applied."
Id.


### III.   DISCUSSION

**A.   Scope of Review**

As a preliminary matter, under 28 U.S.C. § 2254(a), a
federal court may only entertain a habeas petition on the
ground that a petitioner "is in custody in violation of
the Constitution or laws or treaties of the United
States."  Therefore, insofar as they allege deprivations
of his rights under the California Constitution,
Petitioner's claims are not cognizable on federal habeas
review.  See Sperling v. Clay, No. EDCV 08-944-ODW (RNB),
2009 WL 62433, at *5 n.4 (C.D. Cal. Jan. 9, 2009) (citing
Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).
Similarly, the Court only examines Petitioner's
allegations that the BPT violated Cal. Penal Code § 5011
and Cal. Code Regs. 15 § 2236, insofar as this conduct
violated Petitioner's federal constitutional rights.


**B.   BPT Hearing**

Here, as in Swarthout, Petitioner received adequate
process.  Petitioner attended the June 16, 2005, hearing
and was represented by counsel, Ben Ramos.  (Hearing Tr.
1:20-2:14)  At the hearing, Mr. Ramos offered evidence
supporting Petitioner's parole, and contested the

12

evidence against Petitioner.  (<u>See, e.g.</u>, Hearing Tr. 64:16-67:4, 70:13-17.)  Moreover, although Petitioner did not have an opportunity to review all of the documents, Petitioner was afforded access to his records before the hearing, and he believed he had adequate information for the hearing to proceed.  (Hearing Tr. 5:14-6:12.) Finally, the BPT issued a decision on the record at the hearing articulating the reasons it denied Petitioner's parole.  (Hearing Tr. 79:3-86:12.)

Accordingly, as Petitioner was permitted to speak at his hearing and to contest the evidence against him, was afforded access to his records in advance of the hearing, and was notified why parole was denied, under <u>Swarthout</u>, the parole hearing did not violate Jacobs's procedural due process rights.  <u>Swarthout</u>, 2011 U.S. 197627 at *2-3; <u>Smiley</u>, 2011 WL 343951 at *1.  The Court therefore DISMISSES Jacobs's Petition.

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES Arthur Jacobs's Petition for Writ of Habeas Corpus WITH PREJUDICE.

Dated:  <u>February 15, 2011</u>

_____
VIRGINIA A. PHILLIPS
United States District Judge

13